UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| E.L.O. CORPORATION<br><br>PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>DEFENDANTS. | CASE NO.: 1:25-CV-11425<br><br>HONORABLE JUDGE MATTHEW F. KENNELLY |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO**
**PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Plaintiff, E.L.O. Corporation ("ELO" or "Plaintiff"), by and through its undersigned counsel, hereby submits its Reply to the Response and Opposition to Plaintiff's Motion for Entry of a Preliminary Injunction (the "Response"), filed by the following nine (9) defendants: Def. No. 2. abdellaha-61, Def. No. 3. aitosra0, Def. No. 6. aziza-54, Def. No. 31. handcraft-0, Def. No. 37. khaelo-15, Def. No. 55. masnoulha_0, Def. No. 60. mohrahm_47, Def. No. 88. rhassane_0, Def. No. 91 samihf0 (hereinafter the "Responding Defendants"). [38].

**FACTUAL BACKGROUND**

On September 26, 2025, Plaintiff filed its Amended Complaint. [15]. On September 23, 2025, this Court granted Plaintiff leave to file certain documents under seal. [14]. On October 9, 2025, this Court entered a Temporary Restraining Order ("TRO") against the defendants. [24]. On October 17, 2025, Responding Defendants appeared *pro se* under the individual Dalil Medouki. [27]. On October 30, 2025, Plaintiff filed its motion to convert the TRO into a preliminary injunction, which remains pending with respect to the Responding Defendants, (the "Pending Motion") and served the defendants. *See* [35] and [37]. On November 3, 2025, the Responding Defendants filed their Response to the Pending Motion. On November 9, 2025, the Court granted

1

Plaintiff leave to supplement its Pending Motion for preliminary injunction by November 12, 2025, to address the arguments made by the Responding Defendants in their Response and Opposition. [41]. As such, Plaintiff timely files this Reply pursuant to the Court's Order.

## ARGUMENT

Responding Defendants argue that the Court should not enter a preliminary injunction against them because (1) Plaintiff has not demonstrated a likelihood of success on the merits, (2) Plaintiff has not shown irreparable harm, and (3) the balancing of harms is in Responding Defendants' favor. Responding Defendants also argue that the previously entered TRO and the requested preliminary injunction are not permissible under the Lanham Act.

    **A.    Plaintiff Satisfies the Requirements for a Preliminary Injunction Against Responding Defendants**

The standard for granting a preliminary injunction is the same as granting a TRO in this Circuit. *Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citations omitted). A temporary restraining order or preliminary injunction may be issued upon a showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiff's favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996). This Court has previously determined that Plaintiff has met this standard in entering the TRO. [24]. To vacate the preliminary injunction, Responding Defendants need to show a change in law or fact that has rendered the injunction inequitable or unjustified — which Responding Defendants do not attempt to do. Federal Rule of Civil Procedure 60(b). Alternatively, Responding Defendants must show that Plaintiff did not meet the standard for entry of a preliminary injunction.

B. **Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits, a plaintiff need only demonstrate that it has a "'better than negligible' chance of succeeding on the merits so that injunctive relief would be justified." *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (citation omitted). To prevail in an action alleging trademark infringement, a plaintiff must establish "(1) that it has a protectible trademark, and (2) a likelihood of confusion as to the origin of the defendant's product." *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988).

Responding Defendants do not contest that Plaintiff has a protectable trademark. However, Responding Defendants do argue that "[t]he record contains no evidence that the Responding Defendants knowingly sold counterfeit goods or used Plaintiff's mark to confuse consumers." [38]. As a preliminary matter, trademark infringement is an action of strict liability. *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, fn. 6 (7th Cir. 1992) ("Sellers bear strict liability for violations of the Lanham Act.").[1] As such, Plaintiff need only show that Responding Defendants' use of Plaintiff's trademarks would create a likelihood of confusion, which Plaintiff did in its motion for TRO and supporting documents, and which the Court found in entering the TRO against the Responding Defendants. *See* [19] and [24].

Responding Defendants further argue that because the counterfeit products "were fulfilled by Amazon and arrived in Amazon packaging," that "proves that the products were not created or manufactured by the [Responding] Defendant[s]." Plaintiff lacks information sufficient to know whether Responding Defendants did or did not create or manufacture the counterfeit products they sold; however, this is irrelevant in determining whether the Responding Defendants used

---

[1] To the extent plaintiffs need to show purposeful intent or willfulness when seeking a high damages award, a defendant's intent can be inferred by their conduct. *See Lorillard Tobacco Co. v. S&M Central Service Corp.*, 2004 U.S. Dist. LEXIS 22563, *19-20 (N.D. Ill. Nov. 5, 2004).

3

Plaintiff's trademark in commerce. "[A] mark shall be deemed to be in use in commerce (1) on goods when (A) it is placed in any manner on the goods or their containers or the displays associated therewith . . . and (B) the goods are sold or transported in commerce . . . ." 15 U.S.C. § 1127. Responding Defendants used Plaintiff's mark in their product listings, and sold and transported those goods in commerce.

Finally, Responding Defendants argue that "[w]ithout proof of actual sales to U.S. consumers or use of Plaintiff's protected mark in commerce, Plaintiff cannot establish a likelihood of success under the Lanham Act." However, Plaintiff has already provided evidence of Responding Defendants' actual sales into the U.S. (and Illinois), which Plaintiff previously presented in support of its Motion for Entry of a TRO. *See* [19-3], [19-4], and [19-5]. *See also*, Declaration of Ann Marie Sullivan Regarding Personal Jurisdiction, at [22]. Thus, because none of Responding Defendants' arguments have undermined any of Plaintiff's previously established arguments regarding the likelihood of confusion factors, Plaintiff asserts that it demonstrated a likelihood of success on the merits even in light of the Response.

### C. Irreparable Harm

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club*, 846 F.2d at 1092; *see also Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) (which notes that such harms are recognized irreparable harms such that monetary damages are likely to be inadequate).

Additionally, consumer confusion caused by trademark infringement can give rise to irreparable harm that justifies emergency injunctive relief. *See Reverse Mortg. Sols., Inc. v.*

4

*Reverse Mortg. Sols., Inc.*, 2015 WL 9478214, at *8 (N.D. Ill. 2015) (*citing Processed Plastic Co. v. Warner Commc'ns, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982)). In fact, consumer confusion may give rise to a presumption of irreparable harm. *See Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013); *Brithric Enterprises, LLC v. Bay Equity LLC*, 2021 WL 1208957, at *10 (N.D. Ill. 2021) (collecting cases both applying and declining to apply the presumption).Responding Defendants argue that Plaintiff "has offered no evidence of continuing sales or risk of asset dissipation" by the Responding Defendants. However, first, discovery in this matter is ongoing, and Plaintiff has yet to ascertain the extent of Responding Defendants' counterfeit operations. Given that the individual filing on behalf of Responding Defendants operates *at least* nine (9) stores, it is likely that it is operating additional eBay (and potentially other marketplaces) stores through which it could be selling products which infringe Plaintiff's intellectual property. Secondly, while Plaintiff may not have direct evidence that Responding Defendants will move funds out of their eBay accounts, it is worthwhile to note that the entire objective of Responding Defendants' opposition is to have the current frozen amount of $2,015.66 released – presumably, to transfer those funds out of their respective accounts.

Responding Defendants also argue that the asset freeze over the Responding Defendants' account "prevent[s] [the] withdrawal of lawful earnings from unrelated products and "[e]ach day the freeze remains in place" it causes an estimated "$2,000-$4,000" in losses "totaling approximately $30,000 to date." However these allegations are both unsubstantiated and highly unlikely, as only $2,015.66 is frozen, cumulatively, for all Responding Defendants. Furthermore, the asset freeze does not prevent Responding Defendants from selling non-infringing products or halting its business altogether.

    **D.**    **Balancing of Harms**

To obtain a temporary restraining order or preliminary injunction pursuant to Federal Rule of Civil Procedure 65, a plaintiff "must establish that it has

some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotation marks and citation omitted). Once a plaintiff has established those requirements, then the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Id.* (internal quotation marks and citation omitted). In the Seventh Circuit, courts employ a "sliding-scale approach": the more likely a plaintiff is to prevail on the merits, the less the balance of harms must weigh in [the opposing party's] favor; correspondingly, the less likely a plaintiff is to prevail the more the balance must weigh in [opposing party's] favor." *Id.*; *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D. D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted).

In the present case, Plaintiff still faces irreparable harm in the absence of injunctive relief. Additionally, the terms of the TRO have not yet been effectuated, as Responding Defendants have not fully complied with this Court's order, requiring each Defendant "within fourteen (14) days after receiving notice of this Order [to] serve upon Plaintiff a written report under oath providing: (a) their true name and physical address, (b) all websites and online marketplace accounts on any platform that they own and/or operate, (c) their financial accounts, including all financial accounts, and (d) the steps taken by each Defendant to comply with paragraph 1, a through g, above." [24]

at ¶ 2.

Here, in support of its motion for TRO, Plaintiff detailed how it would suffer immediate and irreparable harm, absent a granting of a TRO. [19] at pp. 4-5, 8-10. In particular, Responding Defendants would likely register new online marketplace accounts under new aliases, modify registration data and content, change hosts, move any assets outside the jurisdiction of this Court. *Id.* at p. 5. Additionally, Responding Defendants' unauthorized use of the ThighMaster Trademark irreparably harms Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *Id.* at p. 9. Additionally, an injunction is in the public interest because of the consumer confusion caused by counterfeit goods and infringement interferes with Plaintiff's ability to control its intellectual property.

In applying the "sliding-scale" approach to the present case, the following must be taken into consideration: the ongoing harm Plaintiff faces absent injunctive relief, weighed against the alleged harm faced by Responding Defendants in not being able to withdraw the roughly $2,000 currently frozen in the nine (9) eBay accounts, and the harm to public interest in allowing Responding Defendants to traffic in the sale of counterfeit goods. After weighing these considerations, the balancing of harms weighs greatly in Plaintiff's favor.

### E. The Granted TRO and Requested Preliminary Injunction are Permissible under the Lanham Act

Responding Defendants mostly reiterate their previous arguments in this section of the Response but Responding Defendants do raise a new argument, namely, that the previously granted TRO exceeded the authority of the Lanham Act with regard to the asset restraint imposed. However, Plaintiff contends that the asset restraint is proper and neither overbroad nor excessive.

As previously stated, discovery in this case is ongoing. While Responding Defendants did sell at least ten (10) infringing products, for a profit of $381.57, they also listed as "available" an additional thirty (30) infringing products – pursuant to Responding Defendants' records submitted

in support of their Opposition and data provided in eBay's subpoena response – meaning, Responding Defendants have a current inventory of at least $1,900 in infringing products.[2] Accordingly, the current asset freeze in the amount of $2,015.66 is incredibly reasonable and appropriate. The language of the Lanham Act gives the Court the authority to issue equitable relief, including asset restraints, in cases of federal trademark infringement. *See* 15 U.S.C. § 1116(d)(1)(A) ("In the case of a civil action arising under section 1114(1)(a) of this title . . . the court may, upon *ex parte* application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods."). Furthermore, courts have the inherent authority to issue asset restraints when a plaintiff seeks relief in equity, as in this case. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Pending Motion for Entry of Preliminary Injunction in its entirety against the Responding Defendants and remain in place for the pendency of the action.

Dated: November 12, 2025

Respectfully submitted,

*/s/ John J. Mariane*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts
John J. Mariane

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd., Ste. 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
j.mariane@scip.law

***ATTORNEYS FOR PLAINTIFF***

---

[2] The calculation of the value of Responding Defendants' inventory is based on the number of products listed as available, and that were not sold, and multiplying that by the average GMV per infringing product (roughly $38.00).